## BOARD OF EDUCATION OF CHARLES COUNTY, MARYLAND *v.* ALCRYMAT CORPORATION OF AMERICA

[No. 373, September Term, 1969.]

*Decided June 23, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Richard J. Clark,* with whom was *Edward S. Digges* on the brief, for appellant.

*Francis J. Pelland,* with whom were *Sadur, Pelland & Braude* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

Two questions are principally involved in this appeal (1) whether the Circuit Court for Charles County (Bowen, J.) erred in granting a judgment against the appellant, Board of Education of Charles County (Board) in a tort action filed by Alcrymat Corporation of America, the appellee, (Alcrymat) and (2) whether the Board waived its immunity from tort liability by its failure to raise the issue of governmental immunity by a motion raising preliminary objection pursuant to Maryland Rule 323 b. We have concluded that the trial court erred in granting the judgment against the Board and that there

has been no effective waiver of governmental immunity, so that it is not necessary for us to decide whether the Board was negligent in accepting a payment bond issued by a corporation not authorized to do business in Maryland or whether Alcrymat was guilty of contributory negligence in failing to review the payment bond filed by the Board.

The facts are not in dispute. The Board on September 9, 1965, awarded a contract for a shop addition at the LaPlata High School to Spa Construction Company, Inc. (Spa). Spa, on September 16, 1965, furnished the Board with a payment bond for labor and materials in the amount of $113,898.00 issued by the Metropolitan Fund, Inc. (Metropolitan), 1 Cathedral Street, Annapolis, Maryland. This bond was for the use and benefit of claimants who supplied labor or materials, or both, in the performance of the prime contract.

When the Board received the payment bond from Spa, it did not make inquiry of the State Insurance Department of Maryland to ascertain whether Metropolitan was authorized to conduct a surety business in Maryland. This information could have been obtained by the Board from the Insurance Department by a telephone call or by a letter of inquiry. The Board did forward the payment bond to the Supervisor of School Plant Planning for the Maryland State Department of Education for his approval and the bond was approved by the supervisor.

Alcrymat entered into a subcontract with Spa, the prime contractor, on December 10, 1965, to furnish labor and materials in the performance of the roofing and sheet metal portions of the prime contract and satisfactorily completed its work on or before April 6, 1966. The amount claimed by Alcrymat for this work, which included an extra amount for work not included in the original contract, is $3,392.91. The correctness of this amount is not disputed. Alcrymat has not been paid the amount of its claim.

After the Board discovered that Metropolitan was not and never had been licensed as an insurance company in

Maryland, Spa was notified by letter on May 6, 1966, that under the prime contract it was required to file a payment bond (and also a performance bond) which would meet all of the requirements of the laws of Maryland, retroactive to the date of the prime contract and was given 10 days to meet this requirement, and that the failure to do this would necessitate the termination of the prime contract. Spa, not having met the requirement within the 10-day period, was notified by letter of May 18, 1966, that the prime contract was cancelled.

Alcrymat, on February 27, 1968, filed an action at law against the Board to recover the amount of $3,392.91 alleging, *inter alia,* the Board's breach of its statutory duty and the Board's unjust enrichment by its conduct in derogation of the rights of Alcrymat. The Board demurred to the declaration relying on (1) the one year statute of limitations provided by Code (1957), Art. 90, § 11, (2) lack of privity between the parties and the absence of any duty owed by the Board to Alcrymat and (3) the absence of liability for errors in regard to the adequacy of the surety. This demurrer was overruled by the lower court on November 14, 1968, after which the Board pleaded the general issue plea. Judge Bowen, after hearing testimony and argument, on October 2, 1969, concluded that the Board had been negligent in filing a payment bond written by a surety not authorized to do business in Maryland or approved by the State Insurance Department, that Alcrymat was not guilty of contributory negligence and directed that a judgment be entered in favor of the plaintiff, Alcrymat, for $3,392.91, with interest from date and costs. The Board filed a timely motion for a new trial alleging in substance that Alcrymat could not recover in tort and had failed to show that the Board owed a duty to Alcrymat "and in fact the Defendant owed no duty to the Plaintiff," and assuming that such a duty was shown to exist, Alcrymat was guilty of contributory negligence as a matter of law when it failed to review the bond filed with the Board which was available for public inspection. The lower court overruled

this motion for a new trial and from the final judgment entered upon the verdict, a timely appeal was taken by the Board to this Court.

## (1)

In our opinion, the trial court erred in granting the judgment against the Board in an action in tort. Our recent decisions in *Bolick v. Board of Education of Charles County,* 256 Md. 180, 260 A. 2d 31 (1969) and in *Higdon v. Board of Education of Charles County,* 256 Md. 595, 261 A. 2d 783 (1970), both decisions having been filed after Judge Bowen's determination in the present case, illustrate the law on this point. In both *Bolick* and *Higdon,* the same prime contract and the same payment bond were involved, but with claims of other subcontractors. We held in *Bolick* that boards of education in Maryland are immune from liability from tort actions and that the courts could not change that firmly established rule without legislative sanction. Judge E. Mackall Childs, specially assigned, aptly stated for the Court:

> "Boards of education in this State do not *per se* enjoy governmental immunity from suit, Code (1957) Article 77, Section 38. However, it has been conclusively established that boards of education are immune from liability in tort actions, since the legislature has given them no power to raise money for the purpose of paying damages, nor to pay judgments against them. *Weddle v. Board of County School Commissioners,* 94 Md. 334, 51 A. 289. In *Weisner v. Board of Education,* 237 Md. 391, 206 A. 2d 560, this Court held that the *Weddle* doctrine was too firmly established in Maryland law to justify a change affecting their tort liability without legislative sanction." (256 Md. at 183, 260 A. 2d at 32.)

We cited *Bolick* and considered it to be controlling in *Higdon.*

It is clear that under our decision in *Hamilton & Spiegel, Inc. v. Board of Education of Montgomery County,* 233 Md. 196, 195 A. 2d 710 (1963) there could be no recovery in contract on the theory of creditor beneficiary under the contract between the Board and Spa or under the theory of unjust enrichment. Alcrymat could only recover, if at all, upon the theory of liability in tort and, as we have observed, there can be no recovery under this theory under our decisions in *Higdon* and *Bolick.*

## (2)

In the present case, Alcrymat earnestly contends that even assuming for the argument that it would ordinarily be barred from recovery in tort because of the Board's governmental immunity, the Board, by its failure to raise this defense in accordance with Rule 323 b has effectively waived it in the present case.

Rule 323 provides in paragraph *a* the eight defenses including lack of jurisdiction over the subject matter or over the person "may at the option of the pleader" be made by a motion raising preliminary objections. Paragraph *b* of this rule then provides:

> "*b. Motion Mandatory—Charitable and Governmental Immunity.*
>
> The defense of total or partial charitable or governmental immunity shall be raised by motion pursuant to this Rule. Such motion shall state specifically the grounds for immunity. If a ground for partial immunity is that the damages claimed exceed the limits of available insurance the court shall postpone consideration of this particular ground until after trial of the action on its merits."

In the instant case, counsel for the Board did not file any motion raising preliminary objection under Rule 323. In the Board's demurrer, as we have seen, it raised the point that the declaration had failed to allege any *duty* owed by the Board to Alcrymat, but an examination of

the points and authorities filed in support and in opposition to the demurrer indicates that the alleged absence of a duty was barred on the theory of the alleged compliance by the Board with Art. 90, § 11 of the Code, rather than upon the theory of governmental immunity. Judge Bowen did not consider the issue of governmental immunity, although the record indicates that he had before him the opinion of Chief Judge Macgill in the lower court in *Higdon,* which at least indicated that this issue had been raised, but not decided by the lower court in that case, in that Chief Judge Macgill was of the opinion that the alleged negligence of the Board had not been established and, in any event, the defendant in that case was guilty of contributory negligence as a matter of law.

In *Eliason v. Funk,* 233 Md. 351, 196 A. 2d 887 (1964) we noted that the Committee Note to Rule 323 stated:

> "While the defense of governmental immunity rests on a different basis from that of charitable immunity, it is believed that there are equally persuasive reasons requiring that the defense be raised and its validity determined at an early stage in the proceedings."

We held, however, that Rule 323 b only applied to governmental agencies *eo nomine* and was not applicable to a suit against public officers for an alleged conspiracy to cause the plaintiffs' removal from the classified service, so that it was proper to raise the defense of the immunity of the public officers by demurrer, or by other pleadings.

Although none of our decisions passes upon the precise point in regard to the failure of the Board to raise the defense of governmental immunity by a motion raising preliminary objection pursuant to Rule 323 b, our decision in *Bolick, supra,* comes closer to a consideration of the point than any other decision. In *Bolick,* counsel for the Board did file a motion raising a preliminary objection, but asserted its defense under *paragraph a* (permitting the raising of some eight defenses *at the option of*

the pleader) on the theory that the lower court in *Bolick* had lost jurisdiction over the subject matter in that suit had not been entered within one year of acceptance of the work. The trial court in *Bolick* decided the case in favor of the board in that case on the motion but not upon the ground mentioned. We decided the *Bolick* case on neither the grounds asserted by the board nor upon the reasons stated by the lower court in that case, preferring to decide that case upon the doctrine that boards of education are immune from liability in tort actions. After observing that the lower court in *Bolick* did as a technical matter have jurisdiction over the board and over the subject matter, we stated:

> "It would have served no useful purpose to have the trial court, in deciding the motion under Rule 323, rule that it did in fact have jurisdiction over the Board and the subject matter, but thereafter to hold that there could be no judgment against the Board in an action in tort."

Although a motion raising preliminary objection under Rule 323 was filed in the *Bolick* case, while no such motion was filed by counsel for the Board in the instant case, the motion in *Bolick* was filed raising defenses under Paragraph *a* and did not raise the defense of governmental immunity under Paragraph *b,* so that, in effect, no motion raising the defense of governmental immunity as a preliminary objection under Paragraph *b* was filed in *Bolick.* Nevertheless we proceeded to decide the case upon the doctrine of governmental immunity which was not one of the grounds either raised under Paragraph *b* of Rule 323 or relied upon by the trial court in deciding the case in the board's favor in *Bolick* upon the motion.

It is correct, as Alcrymat argues, that in *Bolick* the case was disposed of upon the pleadings whereas the present case was decided on the merits, after the taking of testimony and argument, so that Alcrymat is prejudiced in the instant case by being subjected to the expense and harassment of a trial which could have been avoided if

counsel for the Board had complied with the provisions of Rule 323 b, the avoidance of an unnecessary trial on the merits being the very purpose of the provisions of Rule 323. There is much force in this argument. However, the law is well established that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity in the absence of express statutory authorization, or by necessary implication from a statute of which there is none applicable to the present case. *McNair v. State,* 305 Mich. 181, 9 N.W.2d 52 (1943). See 81 C.J.S. "States", § 130 a, pages 1138-1139. Cf. *Virginia v. C. & O. Canal Co.,* 32 Md. 501 (1870) involving the Act of 1844, Ch. 281 waiving the State's lien in favor of other creditors of a corporation.

The same rule is applicable to the United States and its governmental agencies. See *United States v. Shaw,* 309 U. S. 495, 60 S. Ct. 659, 84 L. Ed. 888 (1940) and prior cases in the Supreme Court of the United States cited by Mr. Justice Reed in Note 19 of the opinion in that case. See also *Carr v. United States,* 98 U. S. 433, 25 L. Ed. 209 (1878).

We do not indicate any opinion in regard to whether counsel for a charitable corporation may be authorized to waive the defense of charitable immunity either by affirmative action or by failing to raise the defense under Rule 323 b, as we can see possible distinctions between the defense of governmental immunity, on the one hand, and the defense of charitable immunity, on the other. We would prefer to pass upon any question of charitable immunity as and when it arises in a subsequent case and is fully briefed and argued before us.

We do observe, however, that the language of Rule 323 b needs clarification in regard to the defense of governmental immunity and we suggest that the Rules Committee of this Court consider this problem in regular course.

Under Maryland Rule 882 a the awarding of costs is in our discretion and Rule 882 f provides, in relevant part,

that costs shall be allowed to or awarded against the State of Maryland or any agency of the State "in the same manner as costs are awarded against a private litigant. . . ."

In view of the fact that Alcrymat has been put to the expense of this appeal which may well have been unnecessary if the Board had complied with the provisions of Rule 323 b, we have decided that we will require the Board to pay the costs even though we reverse the judgment of the lower court in favor of Alcrymat.

> *Judgment reversed, the costs to be paid by the appellant, Board of Education of Charles County, Maryland.*