523 A.2d 1059

**Guy A. DEAN, a Minor, etc., et al.**

v.

**BOARD OF EDUCATION OF CECIL COUNTY.**

**No. 1061, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 15, 1987.

Certiorari Denied Sept. 9, 1987.

Robin Page West (A. Harold DuBois, Verderaime & Du-Bois, P.A., Baltimore, A. Freebron Brown and Brown, Brown, Brown, Waldron and Baldwin, Bel Air, on brief), for appellants.

Patricia Flannery O'Connor (Lynne B. Malone and Anderson, Coe & King, on brief), Baltimore, for appellee.

Argued before WILNER, BLOOM and ROBERT M. BELL, JJ.

WILNER, Judge.

Md. Code Ann. Cts. & Jud.Proc. art., § 5–306(a) provides, generally, that "no action for unliquidated damages for an injury to a person or his property may be brought against a *county or municipal corporation* unless the notice of the claim required by this section is given within 180 days after the injury." (Emphasis supplied.) The form, content, recipient, and manner of giving the notice is specified in subsection (b).

The principal questions before us in this appeal are whether (1) § 5–306(a) applies to an action against a county board of education, (2) it applies to an action by a minor,

and (3) the Circuit Court for Cecil County applied the proper evidentiary standard in dismissing the plaintiffs' action for failure to give the notice required by § 5–306. Because we answer the first question in the negative, we need not and do not address the other two.

On May 3, 1985, the plaintiffs filed a two-count Complaint against the Cecil County Board of Education, alleging that, on May 21, 1982, while lawfully playing on a playground at the Rising Sun School, the minor plaintiff, Guy Dean, was injured when he fell into a hole that was "cluttered with glass, rubbish, trash and other debris." The basis of the action was negligence on the part of the county school board in creating a dangerous condition on its property, allowing the condition to exist, and failing to give warning of the condition. Count I was brought on behalf of Guy by his father and sought general compensatory damages for the child's injuries. Count II was brought by Guy's parents in their own right; they sought recompense for loss of Guy's services and for medical expenses paid on account of Guy's injuries.

The board moved to dismiss the Complaint solely on the basis that the plaintiffs had failed to give the 180–day notice required by § 5–306 and to aver any good cause for that failure. In response, the plaintiffs conceded that they had not given the required notice but urged that, in light of subsequent notice given by them (in October, 1983—18 months after the event), no prejudice had accrued to the board.[1]

After hearing argument on the motion, the court concluded that § 5–306 was applicable, that the parents, with respect to Count II, were bound by it and had failed to show good cause for their failure to give the required notice, but that Guy, as to Count I, "was not bound by the limitations

---

1. Subsection (c) of § 5–306 permits the court, upon motion and for good cause shown, to "entertain the suit even though the required notice was not given, unless the defendant can affirmatively show that its defense has been prejudiced thereby."

of Section 5–306 during his minority." Upon these conclusions, the court initially granted the board's motion as to Count II but denied it as to Count I. On reconsideration, however, the court changed its view as to Count I and dismissed that count as well, concluding that all plaintiffs were subject either to the notice requirement of § 5–306 or to a similar 180–day notice requirement specified in the State Tort Claims Act (Md. Code Ann. State Gov't art., § 12–106). This appeal followed.

■ We believe that § 5–306 is not applicable to county boards of education, that the notice requirement of the Tort Claims Act is not applicable to this action, and that the Complaint should not have been dismissed for failure to give the notice required under either statute. On the other hand, we conclude that, by virtue of Md. Code Ann. Educ. § 4–105(d), the defense of sovereign immunity may have been available to the board for part of the plaintiffs' claim.

### (1) *Applicability Of § 5–306*

The seeds of § 5–306 were sown with the enactment of a public local law, applicable only to Montgomery County, in 1941. By 1941 Md. Laws, ch. 405, the Legislature provided that no action could be maintained against "the Board of Commissioners of Montgomery County" for unliquidated damages for any injury or damage to person or property unless (1) within 90 days after the injury or damage, the claimant gave written notice to the County Commissioners of the time, place, and circumstances of the injury or damage, or (2) a written report concerning the event was made by a State or county police officer.

Two years later, the Legislature expanded that provision. By 1943 Md. Laws, ch. 809, it repealed the public local law and enacted a new § 18 to then-art. 57 of the Code, providing that an action could not be maintained or claim allowed "against any county or municipal corporation of Maryland" for unliquidated damages for personal injury or property damage unless, within 90 days, written notice was given "to

the City Solicitor of Baltimore City, the County Commissioners, or the corporate authorities of the municipal corporation, as the case may be." *See Bartens v. City of Baltimore,* 293 Md. 620, 624–26, 446 A.2d 1136 (1982), describing the origin and intent of the statute.

Despite the seemingly broad sweep of the Act—"any county or municipal corporation of Maryland"—it was initially limited to Caroline, Montgomery, and Prince George's Counties. By piecemeal amendments over the years, however, the statute was eventually made applicable throughout the State, although its provisions were not uniform. Until 1972, a 180–day notice was required in some counties, a 90–day notice in others; in some charter-government counties, the notice had to be given to the County Executive, in others, it had to be given to the County Council. In *Cotham and Maldonado v. Board,* 260 Md. 556, 565, 273 A.2d 115 (1971), the Court of Appeals commented on the variations then embedded in the statute, charitably characterizing them as "mildly confusing," and invited the Legislature to address the problem. It did so at the next session, making the 180–day notice requirement uniform and allowing a court, for good cause shown and in the absence of prejudice to the defendant, to entertain an action even if the required notice was not given. *See* 1972 Md. Laws, ch. 519; *Rich v. Mayor and City Council,* 265 Md. 647, 290 A.2d 777 (1972).

In 1973, the Cts. & Jud.Proc. art. was adopted as part of the Code Revision process and all remaining sections of art. 57 except this one—§ 18—were moved into the new article. In 1978, § 18 also was transferred, becoming, with a few amendments, § 5–306.

At no time since the original enactment in 1941 has the statute ever mentioned county boards of education; it has referred to counties, county commissioners, municipal corporations, and corporate authorities of municipal corporations, but never to county boards of education. To our

knowledge, the statute has never, until now, been construed as applying to county boards of education.[2]

The board seeks to include itself within the ambit of § 5–306 on two bases. First, it claims that, under the principles or criteria enunciated in *Neuenschwander v. Wash. San. Com.*, 187 Md. 67, 48 A.2d 593 (1946), it is a "municipal corporation"; alternatively, it contends that it is a county agency. We are not persuaded by either argument.

As has been said so many times, "[t]he cardinal rule of statutory construction is to ascertain the actual intent of the Legislature." *Scott v. State*, 297 Md. 235, 245, 465 A.2d 1126 (1983). The primary source for doing that "is the language of the statute itself which should be construed according to its ordinary and natural import." *Comptroller v. Fairchild Industries*, 303 Md. 280, 284, 493 A.2d 341 (1985). A statute "should not be construed by forced or subtle interpretations designed to extend or limit the scope of its operation." *Id.* What is there in § 5–306, or indeed in any of its predecessors, to indicate an intention on the part of the Legislature to include within it county boards of education?

We look in vain. There is nothing. Surely, the Legislature was aware of the status of these boards. They are, and always have been, creatures of the Legislature. Their

---

**2.** In *Hunter v. Bd. of Educ., Mont. Co.*, 292 Md. 481, 439 A.2d 582 (1982), an action based on "educational malpractice," the county board of education raised the point in its brief that the plaintiffs had failed to give the notice required by § 5–306, but neither this Court (*Hunter v. Board of Educ., Mont. Co.*, 47 Md.App. 709, 425 A.2d 681 (1981)) nor the Court of Appeals mentioned that seemingly first-line defense, addressing instead the more substantive issue of whether an action for educational malpractice is cognizable in Maryland. Interestingly, in the later case of *Doe v. Bd. of Educ., Montgomery Co.*, 295 Md. 67, 453 A.2d 814 (1982), where the plaintiffs sued both the county itself and the county board of education for negligence, they apparently gave the required notice to the county but not to the board, and no issue was made by the board of the lack of notice to it. *See also Fitzgerald v. Montgomery County*, 25 Md.App. 709, 336 A.2d 795, *cert. denied* 275 Md. 748 (1975).

organization and their special relationship both to the county government and to the State Department of Education has long been set out in the Code. They are unusual creatures, having an existence independent of the county government, authorized to exercise, on their own, such sovereign power as eminent domain, but yet dependent upon the county government for much of their budget. *See* Md. Code Ann. Educ., §§ 5–101—5–110.

Although in *Clauss v. Board of Education*, 181 Md. 513, 30 A.2d 779 (1943), the Court concluded that for some purposes the board may be regarded as an agency of the county and for others an agency of the State, later decisions seem rather clearly to favor the view that, despite its fiscal reliance on the county government, a county board of education is essentially a State agency. *See Bd. of Ed. v. Montgomery County*, 237 Md. 191, 197, 205 A.2d 202 (1964), holding that such a board "is not a part of the executive branch of the county government nor an agency under its control." *See also Board of Ed. of Pr. Geo. Co. v. Pr. Geo. Co. Ed. Ass'n, Inc.*, 309 Md. 85, 95, n. 3, 522 A.2d 931 (1987), holding that "[c]ounty boards of education are, of course, state agencies and not agencies of the county governments."

Given the peculiar hybrid nature of these boards, and especially their predominant character as *State* rather than *local* agencies, it is evident that, had the Legislature intended § 5–306 to apply to them, it could and would have said so. There is a good explanation for its not having done so.

■ Unlike counties and other corporate political subdivisions, which have traditionally been held liable for tortious conduct arising from the exercise of proprietary functions, until the enactment in 1971 of what is now Educ., § 4–105, county boards of education, though possessing generally the power to sue and be sued, were uniformly held to be immune from tort liability. Public education, including the maintenance of school property, was regarded as a governmental, not a proprietary, function. *Gold v. Baltimore*

*City,* 137 Md. 335, 112 A. 588 (1921); *Baltimore v. Schwind,* 175 Md. 60, 66, 199 A. 853 (1938). The law was clear, at least since *Weddle v. School Commissioners,* 94 Md. 334, 51 A. 289 (1902), that county boards enjoyed a form of governmental or sovereign immunity, "since the legislature has given them no power to raise money for the purpose of paying damages, nor to pay judgments against them." *Bolick v. Bd. of Ed. of Charles Co.,* 256 Md. 180, 183, 260 A.2d 31 (1969); *Bd. of Education v. Alcrymat Corp.,* 258 Md. 508, 266 A.2d 349 (1970). *See also* Annot., *Tort Liability of Public Schools and Institutions of Higher Learning,* 86 A.L.R.2d 489 (1962); *Modern Status of Doctrine of Sovereign Immunity As Applied To Public Schools and Institutions of Higher Learning,* 33 A.L.R.3d 703 (1970). In light of that immunity, it would have been anomalous to construe the statute as applying to a county board of education. The whole purpose of the notice requirement was to enable the public body to make a timely investigation of the facts in order "to ascertain the character and extent of the injury and its responsibility in connection with it," *Jackson v. Bd. of Co. Comm'rs,* 233 Md. 164, 167, 195 A.2d 693 (1963); *Grubbs v. Prince George's Co.,* 267 Md. 318, 321, 297 A.2d 754 (1972); but that purpose would have no meaning if the board is immune in any event. The condition would be absurd in such a case.

We see nothing in the post–1971 enactments to alter that view. The 1971 law—current § 4–105—provided county boards with a limited ability to obtain the funds necessary to satisfy tort judgments and thus overcome the impediment upon which the notion of governmental immunity was based. It requires them to self-insure or obtain insurance in a minimum amount of $100,000 per occurrence, making clear, however, that the board "may raise the defense of sovereign immunity to any amount claimed above the limit of its [insurance]."

Once the county boards lost their immunity (to the extent of the insurance), there may have been some reason for the Legislature to want to bring them within the ambit of

§ 5–306. But we find nothing to suggest that it ever did so. Although some of the language of former art. 57, § 18 was modified when the statute was "Code-revised" and moved to the Cts. & Jud.Proc. art., its scope remained the same— "county or municipal corporation."

The board's reliance on *Neuenschwander,* we think, is misplaced. The issue there was whether the Washington Suburban Sanitary Commission was a "municipal corporation" for purposes of the notice law. In concluding that it was, the Court defined a "municipal corporation" as "a department of the government of the State, created by the Legislature with political powers to be exercised for the public welfare" and as "synonymous with 'public corporation.' " The Commission, said the Court, had those attributes and therefore, for purposes of the statute, constituted a municipal corporation. Of course, unlike the case of a county board of education prior to 1971, the Washington Suburban Sanitary Commission at the time of *Neuenschwander* did not enjoy immunity from tort liability, and so to include it within the statute would not produce a nonsensical result.

A county board of education does indeed possess the general attributes noted in *Neuenschwander,* but to declare it to be a municipal corporation as a result of that would both negate its character as a State agency and mean that it has always been under the statute, which, as noted, could not have been the legislative intent. The same is true with the notion that the board is a county agency. It is for this reason that we believe the court erred in concluding that § 5–306 was applicable.

(2) *Applicability of § 12–106 (State Tort Claims Act)*

The State Tort Claims Act was first enacted in 1981; it was initially codified as Cts. & Jud.Proc. art., §§ 5–401—5–408, but in 1984 was transferred to title 12 of the State Gov't article. Since its enactment, it has applied only to

claims against the State, State agencies, or State personnel. It expressly does not apply to or waive any immunity of "a bicounty unit, county, municipal corporation, or other political subdivision or any unit, official, or employee of any of those agencies or subdivisions." State Gov't art., § 12–103. As with Cts. & Jud.Proc. art., § 5–306, nothing is said, one way or the other, in the Act about county boards of education.

■ Whether or not the Act could be construed as generally applying to claims against county boards of education—an issue we expressly do not address—the fact is that the requirement of advance notice, as now specified in § 12–106(b)(1), did not come into the law until July 1, 1985 (1985 Md. Laws, ch. 538). Prior thereto, § 12–105 simply required, as a condition to filing an action, that a written claim have been filed with the State Treasurer and that the claim have been denied. In rewriting the law, the 1985 Act required, as part of new § 12–106, that the claim have been filed with the Treasurer within 180 days after the injury forming the basis of the claim. That provision, however, cannot control an event that occurred in 1982 or an action filed in May, 1985.

### (3) *Sovereign Immunity*

One problem not addressed by the court, because it was not raised by the board, has to do with the amount of damages sought by the child in Count I—$750,000. Educ., § 4–105, as noted, preserves to the board the defense of sovereign immunity as to any amount claimed in excess of the board's insurance. If indeed the board is self-insured or does not have $750,000 in purchased insurance, that issue may have to be addressed on remand.

JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.