854 A.2d 1208

**STATE of Maryland**

v.

**Ibnomer SHARAFELDIN.**

**No. 102, Sept. Term, 2003.**

Court of Appeals of Maryland.

July 27, 2004.

130

Scott S. Oakley, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., on brief), for appellant/cross-appellee.

Fatai A. Suleman (Amorow & Kum, P.A., Takota Park, on brief), for appellee/cross-appellant.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

In September, 1999, Ibnomer Sharafeldin sued the State Department of Public Safety and Correctional Services in U.S. District Court, claiming, among other things, breach of contract. The contract allegedly breached was a 1995 Settlement Agreement intended to resolve a discrimination claim that Sharafeldin had filed against the Department with the State Human Relations Commission (HRC) and the Federal Equal Employment Opportunity Commission (EEOC). When, in April, 2000, his Federal breach of contract action was dismissed on Eleventh Amendment sovereign immunity grounds, Sharafeldin filed a similar claim in the Circuit Court for Baltimore City, where he met with better success. The jury returned a verdict in his favor of $366,500, which, upon his acceptance of a remittitur in order to avoid a new trial, was reduced to $108,000.

Two inter-related issues are before us in this appeal from the Circuit Court judgment, both emanating from the Department's defense of sovereign immunity. Through the enactment of what is now Maryland Code, § 12–201 of the State Government Article (SG), the Legislature has conditionally waived the State's sovereign immunity in actions filed in Maryland courts for breach of a written contract, but in § 12–202 has provided that "[a] claim under this subtitle is barred unless the claimant files suit within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim." The first question is whether § 12–202 constitutes a condition to the waiver of sovereign immunity and thus to the right of action itself against the State or is, instead, merely a statute of limitations.

It is undisputed that the action in Circuit Court was not filed within the allowable one-year period. In order to save that action, Sharafeldin relies on Maryland Rule 2–101(b), which provides, in relevant part, that, if an action is filed in U.S. District Court within "the period of limitations prescribed

by Maryland law" and the Federal action is dismissed for lack of jurisdiction, an action filed in the State Circuit Court within 30 days after entry of the order of dismissal "shall be treated as timely filed in this State." The second issue, as presented, depends on the answer to the first. If SG § 12–202 is merely a statute of limitations and Sharafeldin's action was filed in Federal court within the one-year period, the action filed in Circuit Court would be regarded as timely, as it was filed within 30 days after the Federal breach of contract claim was dismissed on jurisdictional grounds. If SG § 12–202 is a condition to suit and not a statute of limitations, however, the question arises whether Rule 2–101(b) can save the action even if it had been filed in Federal court within the one-year period; does § 12–202, in other words, bar the action if not filed in *State* court within the one-year period? [1]

## BACKGROUND

Sharafeldin was employed by the Department as a chaplain at one or more of the State prisons in the Hagerstown area. He began in 1989 as a contractual employee but, after filing discrimination charges against the Department with the HRC and EEOC, he became a full-time employee in 1991. Since then, he has filed seven further complaints of discrimination. The gist of his current unhappiness was his desire to be transferred from the Hagerstown complex to prisons in the Baltimore/Jessup area.

In February, 1995, in a resolution of one of his complaints to HRC and EEOC, the Department entered into a written Settlement Agreement with Sharafeldin in which the Department made three commitments:

---

1. There is a third issue, of whether Sharafeldin's breach of contract claim was filed in Federal court within the one-year period. It clearly was not filed within one year after the dates upon which the claims arose, but there is at least an argument that it was filed within one year after "completion of the contract that gives rise to the claim." We need not address that issue in light of our response to the other two. Sharafeldin also moved to dismiss the Department's appeal as untimely. We deny that motion.

(1) It would rescind two existing suspensions and pay lost wages of $632;

(2) It would "[n]otify and interview [Sharafeldin] for consideration of Chaplain position in the Baltimore/Jessup region"; and

(3) It agreed that "there will be no retaliation or harassment taken against [Sharafeldin]."

In October, 1995, a chaplain position opened in the Jessup area. The Department notified Sharafeldin of the vacancy, interviewed him for the position, but selected someone else for the job—a chaplain who received higher scores from three different raters selected by the Department to review the applications. In the Fall of 1997, another chaplain position opened in the Jessup area. Believing that it had fulfilled its obligation to Sharafeldin by considering him for the 1995 vacancy, the Department filled that position without notifying or interviewing Sharafeldin. In March, 1998, the Department informed Sharafeldin of a third vacancy in a chaplain position in Jessup, interviewed him for the position, but, again, hired someone else, a person who received higher scores from five different raters. On August 21, 1998, an incident involving Sharafeldin and two correctional officers occurred at one of the Hagerstown prisons, in which Sharafeldin was allegedly shoved and mildly bruised. He filed criminal charges against the officers, which were dismissed, and another discrimination complaint with HRC and EEOC, which also was unsuccessful. He never returned to work, although, for whatever reason, the Department kept him on the payroll until June, 1999.

On September 27, 1999, Sharafeldin filed a three-count complaint against the Department in the U.S. District Court, alleging hostile-work-environment harassment on the basis of his race, color, religion, and national origin (Count I) [2], constructive discharge arising from the hostile-work-environment harassment (Count II), and breach of the 1995 Settlement Agreement (Count III). In Count III, Sharafeldin alleged that the Department breached the 1995 agreement "by not

---

2. Sharafeldin claims to be a black, Sudanese-born Muslim.

notifying him of chaplaincy position on at least two occasions" and by "retaliating against him when the Defendant did not hire him or transfer him for the chaplaincy position for which he was well qualified" and picking, instead, "candidates who were less qualified than the Plaintiff."

The Department's response to the complaint is not in the record before us. It appears from the court's discussion, however, that the dispositive argument with respect to Count III, made in a motion to dismiss, was Eleventh Amendment sovereign immunity, for, on April 10, 2000, the court dismissed Count III on that ground and discussed no other.

In February, 2001, the court entered summary judgment for the Department on the other two counts, concluding that Sharafeldin had not shown that the harassment alleged by him was based on race, religion, or national origin. Indeed, the court concluded that Sharafeldin was "a contentious, disgruntled and paranoiac employee who clashed with almost everyone with whom he came into contact, including inmates, correctional officers, nurses, other chaplains, and superiors," that he "constantly complained about his duties and work assignments," that he "overreacted to petty slights and inconveniences," that it was his "inability to work with others and to comply with the directions of his superiors which led to the claims asserted by him," and that "[w]henever disputes or conflicts arose, Sharafeldin attributed them to his race, his religion or his national origin." *Sharafeldin v. Maryland, Dept. of Public Safety,* 131 F.Supp.2d 730, 740 (D.Md.2001). In an unreported opinion filed November 15, 2001, the U.S. Court of Appeals for the Fourth Circuit summarily affirmed the judgment of the District Court.

On April 25, 2000—15 days after dismissal of Count III of his Federal complaint—Sharafeldin filed a two-count complaint against the Department in the Circuit Court for Baltimore City. Count 1, captioned "Breach of Settlement Agreement," alleged that, in the 1995 Settlement Agreement, a copy of which was attached to the Complaint, the Department promised that it would notify Sharafeldin "of vacant chaplain positions in the Baltimore and Jessup regions and would

interview him for consideration of those positions" and that the Department breached the agreement in two respects: first, in the Fall of 1997, by appointing another person to fill a vacant position in Jessup without notifying him of the vacancy, and second, by failing to hire him to fill vacancies that occurred in October, 1995 and March, 1998, failures which Sharafeldin averred constituted retaliation against him for filing a discrimination complaint.

Count 2, captioned "Breach of Implied Covenant of Good Faith and Fair Dealing," incorporated the earlier averments and asserted that the Department "did not observe good faith and fair dealing under the agreement when it had every opportunity to do so" and that, by reason of its failure to make a good faith effort to honor the Settlement Agreement, Sharafeldin was forced to endure "years of hostile and abusive work environment and to subsequently los[e] his job." Count 2 was thus also in the nature of a breach of contract claim, based on an alleged breach of the 1995 Settlement Agreement.

The Department moved to dismiss the action on the ground of sovereign immunity. As to Count 1, the Department argued, that, because the action was not brought within one year from the date on which Sharafeldin's claims arose, the Department retained its defense of sovereign immunity. In presenting that defense, the Department contended, at least by implication, that the requirement imposed by SG § 12–202 of bringing suit within one year constitutes not a statute of limitations but a condition precedent to the action itself—a condition to the waiver of the State's sovereign immunity. In taking that position, the Department neglected to plead, as an alternative and in conformance with the requirement of Maryland Rule 2–323(g), that the one year requirement stated in § 12–202, did constitute a special Statute of Limitations and that Sharafeldin's action was barred on that ground. Count 2, the Department argued, rested on implied provisions, and the State retained its sovereign immunity with respect to implied contracts.

The Department's motion was denied without comment or explanation. After some discovery, Sharafeldin and the De-

partment filed cross-motions for summary judgment, both of which were denied. The Department's motion rested on its view that the Settlement Agreement required it to inform Sharafeldin of a vacancy in the Baltimore/Jessup area and to interview him for such a position only one time, and that it complied with that requirement in October, 1995. It asserted, in that regard, that the Department "had an obligation only to notify Plaintiff of, and interview him for, a *single* Chaplain position."

The dispositive motions having been denied, the case was submitted to trial before a jury, which returned a verdict in Sharafeldin's favor in the amount of $366,500. In response to the Department's post-verdict motion, the court determined that the verdict was "excessive and shocks the Court's conscience," and therefore ordered a new trial unless Sharafeldin accepted a reduction to $108,000. Sharafeldin accepted the remittitur in order to avoid a new trial and judgment was entered in that amount.

The Department appealed, complaining about the denial of its motions to dismiss and for summary judgment. Sharafeldin cross-appealed; he complains only about the remittitur. We granted *certiorari* prior to proceedings in the Court of Special Appeals, principally to review the Department's argument that the requirement in SG § 12–202 that an action against the State or its agencies for breach of contract be brought within one year constitutes a condition precedent to the State's waiver of its sovereign immunity in breach of contract actions, rather than a statute of limitations, and that it is jurisdictional in nature. Because we are reviewing the judgment of the Circuit Court, rather than one of the Court of Special Appeals, the other two issues raised by the parties are also before us, although it will not be necessary for us to address them.

## DISCUSSION

### The Nature of SG § 12–202

■■ The nature and effect of SG § 12–202 is a matter of statutory construction which, as we have often said, depends

on legislative intent: did the General Assembly intend the requirement that an action subject to § 12–201 be filed within one year to be a condition to the waiver of sovereign immunity and thus a condition to the action itself, or merely a shorter statute of limitations than would otherwise apply to a breach of contract action? As we recently observed in a case involving § 12–202, in attempting to divine legislative intent, we look first to the words of the statute, "but if the true legislative intent cannot readily be determined from the statutory language alone, we look to other indicia of that intent, including the title to the bill, the structure of the statute, the interrelationship of its various provisions, its legislative history, its general purpose, and the relative rationality and legal effect of various competing constructions." *Baltimore County v. RTKL Associates,* 380 Md. 670, 846 A.2d 433 (2004).

The mere wording of SG § 12–202 does not inform us clearly of what the Legislature intended in this regard. We may, as we shall explain, draw certain inferences from that wording, but it does not directly supply an answer. As we pointed out in *RTKL,* the question of waiving sovereign immunity in both tort and breach of contract actions was the subject of considerable study by the Legislature in the mid–1970's. Bills to waive immunity in breach of contract actions were passed in 1974 and 1975 but were vetoed by the Governor, who preferred to await the result of a comprehensive study of the matter by a gubernatorial Commission that had been created to examine the issue. In an interim report made in February, 1976, the Commission recommended a conditional waiver of immunity in contract actions, and that report served as the basis for the enactment of what is now codified in SG §§ 12–201 and 12–202. *See* 1976 Md. Laws, ch. 450. Indeed, the Legislature made specific reference to the Commission report in the bill.

In its report, the Commission noted concerns that the waiver of immunity in contract actions might have a significant fiscal impact by increasing liability on the part of the State, not only for contract damages but also for the cost of having to defend actions that then were routinely dismissed on mo-

tion.[3] Responding to those concerns, the Commission observed that, in other States that had waived immunity, the fiscal impact was negligible, in part because "when the states abrogate sovereign immunity in contract, they do so subject to a number of exceptions *and limitations* which act to further minimize the fiscal impact." *See Report of the Governor's Commission to Study Sovereign Immunity,* November, 1976, at 40. (Emphasis added).

Perhaps keying on the word "limitations" used by the Commission, but without any documented critical analysis, the Legislature used that word in the title to the bill. The descriptive title stated the purpose of the bill to be to provide that the State and its various units may not raise the defense of sovereign immunity in the courts of this State in an action in contract based on certain written contracts, and "[to set] forth certain exclusions and limitations applicable to such actions."

Several "exclusions and limitations" were provided in the bill: the waiver applied only to breaches of written contracts executed by an official or employee acting within the scope of his/her authority; there would be no liability for punitive damages; and the action was barred if not filed within the one-year period. The best that can be said for this, from Sharafeldin's point of view, is that the Legislature used the word "limitations" as a generally descriptive term that probably included the requirement of bringing suit within one year, but not in the technical sense of a true statute of limitations. In *Frankel v. Board of Regents,* 361 Md. 298, 308, 761 A.2d 324, 329 (2000), we referred to § 12–202 as providing a "period of limitations," again as a generally descriptive term, and in *RTKL, supra,* we referred to a similar statute, applicable to actions against chartered counties, as a statute of limitations but noted that we did so as a matter of convenience and

---

**3.** Much of the concern in that regard was expressed by county and municipal governments which the Commission assumed enjoyed sovereign immunity in contract actions. As we pointed out in *RTKL,* however, that assumption was a mistaken one.

expressed no view whether it, or its counterparts, such as § 12–202, "are true statutes of limitations or conditions on the right to sue." *RTKL, supra,* 380 Md. at 677, n. 1, 846 A.2d at 437, n. 1. In neither case was the issue now before us presented.

 Two considerations militate against inferring an intent to regard SG § 12–202 as a mere statute of limitations, waivable at will by State agencies or their respective attorneys. We have held, consistently, that immunity from suit is "one of the highest attributes of sovereignty," and that any waiver of that immunity must come from the Legislature. *See Katz v. Washington Sub. San. Com'n,* 284 Md. 503, 512–13, 397 A.2d 1027, 1032 (1979); *Dep't of Natural Resources v. Welsh,* 308 Md. 54, 59–60, 521 A.2d 313, 315–16 (1986). State agencies may not, on their own, waive sovereign immunity "either affirmatively or by failure to plead it." *Welsh,* 308 Md. at 60, 521 A.2d at 316. *See also Board v. John K. Ruff, Inc.,* 278 Md. 580, 583, 366 A.2d 360, 362 (1976); *Bd. of Education v. Alcrymat Corp.,* 258 Md. 508, 516, 266 A.2d 349, 353 (1970). Moreover, unlike the situation in some States, we have made clear that the origin of the doctrine of sovereign immunity in Maryland did not stem from judicial fiat but was statutory in nature, and "[w]e have consistently declined to abrogate sovereign immunity by judicial fiat." *Dep't of Natural Resources v. Welsh, supra,* 308 Md. at 59, 521 A.2d at 315, and cases cited there.

SG § 12–202 is not worded like the traditional statutes of limitations, which normally state only that an action "shall be filed within" the allowable period. *See,* for example, Maryland Code, Courts & Jud. Proc. Article, § 5–101 (general three-year statute of limitations for civil actions), § 5–102 (twelve year statute of limitations for actions on specialties), § 5–104 (five year statute of limitations for action on public officer's bond); § 5–105 (one year statute of limitations for action for assault, libel, or slander); § 5–106 (statute of limitations for prosecution of misdemeanor); § 5–109 (statute of limitations for actions against health care providers); § 5–110 (action to

enforce liability under Public Information Act); § 5–111 (action for contempt for failure to pay child or spousal support); § 5–113 (action for damages arising out of occupational disease).

Those statutes say nothing about an untimely action being "barred." Thus, we have regarded limitations as not "deny[ing] the plaintiff's right of action, but only the exercise of the right," *Foos v. Steinberg*, 247 Md. 35, 38, 230 A.2d 79, 80 (1967). Accordingly, we have held that limitations is an affirmative defense that can be waived and that *is* waived unless raised in the defendant's answer. *See* Maryland Rule 2–323(g); *Foos, supra; Brooks v. State*, 85 Md.App. 355, 365, 584 A.2d 82, 87 (1991) (Opinion by Bell, J.).

In contrast, SG § 12–202 states that a claim under the subtitle "is barred" unless suit is filed within one year. That, we believe, was intended to preserve the effect of sovereign immunity itself, which barred the action entirely. In using that language, the Legislature could not have intended to permit subordinate agencies, or counsel for those agencies, to be able to permit an action that the Legislature expressly declared "barred" to proceed nonetheless, by simply omitting to raise the defense. That would effectively allow sovereign immunity to be waived by subordinate agencies or the attorneys who represent them which, as noted, we have consistently held they are not empowered to do.

When the predecessor to § 12–202 was first enacted in 1976, and even when the statute was re-enacted as part of the State Government Article in 1984, through the code revision process, the Federal courts had almost unanimously construed similarly worded Federal statutes as jurisdictional in nature and not as statutes of limitations that could be tolled or waived. Title 28 U.S.C. § 2401 sets time limits on the bringing of actions against the United States. Section 2401(a) provides that "every civil action commenced against the United States *shall be barred* unless the complaint is filed within six years after the right of action first accrues." (Emphasis added). Subsection (b), applicable specifically to tort claims, provides that a

tort claim against the United States "shall be forever barred" unless the claim is presented to the appropriate Federal agency within two years after it accrues and an action in court is filed within six months after denial of the claim by the agency.

Until 1990, the Federal courts had construed those provisions as meaning that, if an action under § 2401(a) was not brought within the prescribed six-year period, or a claim under § 2401(b) was not submitted to the agency within the two year period and, if the claim was denied, an action was not filed in court within six months after notice was received of the denial, the court was without jurisdiction to entertain the action. *See Crown Coat Front Co. v. United States,* 363 F.2d 407 (2nd Cir.1966), *rev'd on other grounds,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *Powers v. United States,* 390 F.2d 602 (9th Cir.1968); *Mann v. United States,* 399 F.2d 672 (9th Cir.1968); *Houston v. United States Postal Service,* 823 F.2d 896, 902 (5th Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988); *Johnston v. United States,* 85 F.3d 217 (5th Cir.1996); *Girard v. United States,* 455 F.Supp. 502 (D.N.H.1978); *Thompson v. Dugan,* 427 F.Supp. 342 (E.D.Pa.1977); *Huntington Steel Corp. v. United States,* 153 F.Supp. 920 (S.D.N.Y.1957).[4] In *Soriano v. United*

---

4. There are a few State cases that *appear* to state a contrary view, but, on analysis, they are distinguishable in that they all involved notice of tort claim requirements rather than filing of suit requirements. *See Pritchard v. State,* 163 Ariz. 427, 788 P.2d 1178 (1990); *Fredrichsen v. City of Lakewood,* 6 Cal.3d 353, 99 Cal.Rptr. 13, 491 P.2d 805 (1971); *Bryant v. Duval County Hosp. Authority,* 502 So.2d 459 (Fla.Dist.Ct.App. 1986); *Hill v. Board of Ed. of Middletown,* 183 N.J.Super. 36, 443 A.2d 225 (1982). We have regarded our analogous notice of tort claim requirement as substantive in nature, although, by statute, it is subject to waiver for good cause and may be satisfied by substantial compliance. *See Moore v. Norouzi,* 371 Md. 154, 807 A.2d 632 (2002). *Pritchard* is distinguishable in another important respect. The Arizona court had previously abolished sovereign immunity by judicial fiat, so the time limitation was not a condition to a statutory waiver of immunity and therefore was not regarded as part of the right of action itself. The *Pritchard* court noted that the right to sue the State in Arizona "is not a statutory grant, as is the case in several other states; rather it is a common law rule in Arizona that the government is liable for its

*States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), the Supreme Court confirmed its earlier holding in *Kendall v. United States,* 107 U.S. 123, 2 S.Ct. 277, 27 L.Ed. 437 (1883) that a similar statute—28 U.S.C. § 2501, barring claims otherwise within the jurisdiction of the then-constituted Court of Claims unless filed within six years after the claim first accrued—was jurisdictional in nature and not subject to equitable tolling.[5]

That nearly universal construction of the Federal statute was shattered in 1990—fourteen years after the first enactment of the Maryland statute and six years after its reenactment as part of the State Government Article—when the Supreme Court released its opinion in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). *Irwin* did not involve 28 U.S.C. § 2401, but rather 42 U.S.C. § 2000e–16(c), which required that an employment discrimination complaint against the Federal Government under Title VII of the Civil Rights Act of 1964 be filed "[w]ithin thirty days of receipt of notice of final action taken" by the EEOC. In *Irwin,* the EEOC decision was sent to Irwin's lawyer, who was out of the country at the time. The complaint in court was filed 44 days after the decision was received by the attorney's office but 29 days after the decision

---

tortious conduct and immunity is the exception," *id.* at 1182, and, on that basis, the court found the notice requirement to be merely procedural. *Id.* at 1183.

**5.** We need not complicate the issue by addressing it in terms of whether the defense is "jurisdictional" in nature. The question involves the State's immunity from suit, not the jurisdiction of the court. The courts were never deprived of fundamental jurisdiction over the State and its agencies; even before the general waiver of immunity, the State and its agencies were subject to suit for breach of contract if the Legislature authorized them to be sued and funds were available to pay any judgment that might be rendered against them. *University of Maryland v. Maas,* 173 Md. 554, 197 A. 123 (1938). The relevant focus is on whether the time limitation for bringing an action for breach of contract is a non-waivable, non-tollable condition to the waiver of immunity. If it is and the condition is not met, an action against the State must be dismissed because the State remains immune from suit, not because the court is without jurisdiction.

was first received by Irwin. The Court concluded that the time began to run when the decision was received in the attorney's office and that the complaint therefore was not timely. It turned then to whether the late-filed claim was jurisdictionally barred or whether there was a basis for equitable tolling of the limitations period.

The Court agreed that the statute, even as worded, was "a condition to the waiver of sovereign immunity and thus must be strictly construed." *Irwin,* 498 U.S. at 94, 111 S.Ct. at 456, 112 L.Ed.2d at 443. Though acknowledging *Soriano* and its more recent statement in *Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462, 474 (1986) that it should not " 'assume the authority to narrow the waiver that Congress intended,' " (citation omitted), the Court nonetheless regarded some of its decisions on Federal statutes of limitations as not entirely consistent, and felt the need "to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government." *Irwin,* 498 U.S. at 95, 111 S.Ct. at 457, 112 L.Ed.2d at 443. The rule it adopted, with respect to equitable tolling, was to equate suits against the Government with suits against private parties, and it thus held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96, 111 S.Ct. at 457, 112 L.Ed.2d at 443–44. In announcing that decision, the Court observed that the language of 42 U.S.C. § 2000e–16(c) was not identical to that in statutes such as 28 U.S.C. § 2501, construed in *Soriano,* and that "[a]n argument can undoubtedly be made that the latter language is more stringent than the former," but was not persuaded "that the difference between them is enough to manifest a different congressional intent with respect to the availability of equitable tolling." *Id.* at 95, 111 S.Ct. at 457, 112 L.Ed.2d at 443.

Although intended to create uniformity in this area, *Irwin* has appeared to sow more confusion and disuniformity than existed earlier. In two later cases, the Court concluded that the 12–year period of limitations applicable to actions against the Government to quiet title to land and the period of

limitations for filing a claim for a tax refund were not subject to equitable tolling. *See United States v. Beggerly,* 524 U.S. 38, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) and *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). The courts must still look at each statute to determine whether Congress meant for the limitations period to be subject to equitable tolling. Apart from that, the lower Federal courts are in some disarray as to how *Irwin* impacts other limitations periods, especially those applicable to Federal Tort Claims Act (FTCA) claims.

Title 28 U.S.C. § 2401(b), as noted, contains two limitations requirements. A tort claim against the United States is barred unless, first, it is presented in writing to the appropriate Federal agency within two years after the claim accrues, and second, a lawsuit is filed within six months after the agency mails notice of final denial of the claim. Prior to *Irwin,* both requirements had been regarded as jurisdictional, and the failure to comply with either one doomed the action. There are now conflicting decisions as to whether equitable tolling may excuse a failure to comply with either or both.

*Irwin* did not involve or directly address statutes such as 28 U.S.C. § 2401, and much of the language in the opinion was thus essentially *obiter dicta* with respect to that statute. Most of the lower Federal courts have given credence to that language, however, have shifted their previously-held view, and have applied equitable tolling principles to untimely claims made to the administrative agency or to untimely lawsuits after denial of the claim. Not all of the Federal courts have taken that approach, and there appears to be a split in some of the circuits.[6] Very few cases have arisen since *Irwin* with respect to contract claims against the Government. In *UOP*

---

**6.** In the First Circuit, compare *Roman v. Townsend,* 224 F.3d 24, 28 (1st Cir.2000) and *Heinrich v. Sweet,* 44 F.Supp.2d 408, 415 (D.Mass. 1999), holding that the period of limitations for a FTCA claim is jurisdictional in nature and thus non-waivable, and *de Casenave v. United States,* 991 F.2d 11, 13 (1st Cir.1993), recognizing the prospect of equitable tolling " 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his

*v. United States,* 99 F.3d 344 (9th Cir.1996), the Ninth Circuit court, without mentioning *Irwin,* held that 28 U.S.C. § 2401(a) was jurisdictional and not a waivable defense. In *Cedars–Sinai Medical Center v. Shalala,* 125 F.3d 765 (9th Cir.1997), the same court held the exact opposite—that § 2401(a) was not jurisdictional and was subject to waiver.

We are not bound, of course, by any of these Federal decisions, including *Irwin.* Their only relevance is in how

adversary's misconduct into allowing the filing deadline to pass,' " (quoting *Irwin,* 498 U.S. at 96, 111 S.Ct. at 457–58), but finding no such tolling in that case. In the Second Circuit, compare *Air India v. Brien,* 261 F.Supp.2d 134, 137 (E.D.N.Y.2003), holding that 28 U.S.C. § 2401 is "a jurisdictional predicate for this court's ability to entertain the claim" with *Hyatt v. United States,* 968 F.Supp. 96 (E.D.N.Y.1997), applying equitable tolling to an untimely FTCA claim. The Third Circuit, citing *Irwin,* has concluded that the six-month period allowed by § 2401(b) is not jurisdictional, but is waivable and subject to equitable tolling. *See Hughes v. United States,* 263 F.3d 272, 278 (3rd Cir.2001). In the Fourth Circuit, we read *Muth v. United States,* 1 F.3d 246 (4th Cir.1993) as indicating that equitable tolling might apply to a FTCA claim, in an appropriate case, but one District Court has continued to hold that the requirement of filing suit within six months after administrative denial of the claim is jurisdictional. *See Gibbs v. United States,* 34 F.Supp.2d 405 (S.D.W.Va.1999). In *Flory v. United States,* 138 F.3d 157 (5th Cir.1998), the Fifth Circuit court declared baldly that both limitations periods in § 2401(b) were jurisdictional, but in *Lambert v. United States,* 44 F.3d 296 (5th Cir.1995), the court read *Irwin* as permitting equitable tolling, although it declined to apply the doctrine in that case. *See also Perez v. United States,* 167 F.3d 913 (5th Cir.1999) (permitting and applying equitable tolling). The Sixth, Seventh, Eighth, and Ninth Circuits have construed *Irwin* as allowing equitable tolling even of the two-year requirement for filing a claim with the administrative agency. *See Glarner v. United States,* 30 F.3d 697 (6th Cir.1994); *Goodhand v. United States,* 40 F.3d 209 (7th Cir.1994); *Kanar v. United States,* 118 F.3d 527 (7th Cir.1997); *Schmidt v. United States,* 933 F.2d 639 (8th Cir.1991) (on remand for reconsideration in light of *Irwin* ); *Slaaten v. United States,* 990 F.2d 1038 (8th Cir.1993); *Alvarez–Machain v. United States,* 107 F.3d 696 (9th Cir.1996). In *Hoery v. United States,* 324 F.3d 1220, 1221 (10th Cir.2003), the Tenth Circuit Court held that, "because the FTCA is a waiver of sovereign immunity, timeliness is a prerequisite for subject matter jurisdiction." In *Benge v. United States,* 17 F.3d 1286 (10th Cir.1994), that court declined to address whether equitable tolling applied to an FTCA claim because it would not have benefitted the plaintiff in that case in any event. A District Court in the Eleventh Circuit applied equitable tolling to an FTCA claim in *Stanfill v. United States,* 43 F.Supp.2d 1304 (M.D.Ala. 1999).

they might impact our view of the legislative intent behind SG § 12–202, which is the controlling consideration. If that statute had been enacted after 1990, we might embrace the fiction that the Legislature was aware of the Supreme Court's analysis in *Irwin* and construe § 12–202 in accordance with it. The fact is, however, that when the Legislature first waived immunity in contract actions in 1976 and later re-enacted that waiver as part of the State Government Article, the Federal decisions, including the Supreme Court's decision in *Soriano*, were nearly all to the effect that the analogous time limitations were, indeed, conditions to the waiver of immunity and were not subject to waiver or tolling. For our purposes, therefore, the relevant Federal law is that which existed before *Irwin.*

█ Allied with the principle applied in the pre-*Irwin* decisions, arising from the language of the statute itself, is the well-recognized but more general rule, to which we have adhered, that, where a statute creates a new cause of action and fixes a time within which a suit under the statute must be filed, "[t]he time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone." *The Harrisburg,* 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358, 362 (1886). The *Harrisburg* Court noted that, in such a situation:

> "Time has been made of the essence of the right and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are therefore to be treated as limitations of the right."

*Id.*

In *State v. Parks,* 148 Md. 477, 479–82, 129 A. 793–94 (1925), we adopted and applied that principle to actions under the wrongful death statute, and, notwithstanding that the more central holding of *The Harrisburg,* that there was no common law right of action for wrongful death in Federal maritime cases, was overruled in *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), we have

continued to follow that approach and have treated the over-ruling of the substantive holding of *The Harrisburg* as irrelevant. *See Waddell v. Kirkpatrick,* 331 Md. 52, 57–59, 626 A.2d 353, 355–56 (1993).

Significant in this regard is our application of that principle to claims against decedents' estates. In language similar to that used in SG § 12–202, Estates and Trusts Article, § 8–103 provides that such claims are "forever barred" unless filed within the periods stated in the statute. In *Blocher v. Harlow,* 268 Md. 571, 303 A.2d 395 (1973), disapproved on other grounds in *Eastgate Assoc. v. Apper,* 276 Md. 698, 703, 350 A.2d 661, 665 (1976), we confirmed earlier rulings that the limitations period, even though affirmatively waivable by a personal representative under certain circumstances, is a condition to the right itself and not merely to the remedy. We expressed the more general view that "[t]here is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy. . . ." *Id.* at 581, 303 A.2d at 400.

The 1976 law, now codified in SG §§ 12–201 and 12–202, was intended as a conditional waiver of the State's sovereign immunity in contract actions, which was to be accomplished by precluding the State and its agencies from raising that defense if the action was founded on a written contract executed by an authorized official or employee and the action was brought within the one-year period. If the action was not brought within that period, however, it was "barred." The sovereign immunity that the State enjoyed remained in effect; it could not be waived by subordinate agencies or their attorneys, and thus the agencies were required by law to raise the defense. We hold, therefore, that § 12–202 is not a mere statute of limitations but sets forth a condition to the action itself. The waiver of the State's immunity vanishes at the end of the one-year period, and an

action filed thereafter is subject to the same fate it would have suffered prior to the enactment of the 1976 legislation.

### Maryland Rule 2–101(b)

■ The second issue, of whether Rule 2–101(b) can save an action against a State agency for breach of contract that is (1) timely filed in Federal court, (2) dismissed on jurisdictional grounds, and (3) refiled within 30 days in State court, is also one we have not yet addressed. The Department interprets the Rule as providing an "automatic extension of a period of limitations" and argues that, as SG § 12–202 is not a period of limitations, the Rule is inapplicable. We agree with the Department's ultimate conclusion, but on a somewhat different analysis.

The Rule is a general one, intended to save actions initially filed in a non-Maryland court but in a timely manner under Maryland law. We need not consider in this case whether the Rule operates to save other actions subject to a "condition of suit" limitations period that are initially filed within the prescribed period. There is a more precise reason why it does not apply to actions subject to SG § 12–202.

Sections 12–201 and 12–202 must be read together. Section 12–201 precludes the State and its agencies from raising the defense of sovereign immunity in a contract action "in a court *of* the State" (emphasis added), meaning a court that is part of the Maryland judiciary. There was clearly no intent on the part of the Legislature to waive the State's Eleventh Amendment immunity in actions in Federal court or to waive its inherent sovereign immunity in actions filed in the courts of some other State. Section 12–201 is plainly limited to an action in a Maryland court.

Section 12–202 states that "[a] claim *under this subtitle* is barred unless the claimant files suit within 1 year...." (Emphasis added). A claim "under this subtitle" is necessarily a claim filed in a Maryland court, a claim to which § 12–201 would otherwise apply. If, as we hold, the one year requirement is a condition to the action itself, it follows that sovereign

immunity is not waived unless the action is filed in a Maryland court within the one year period. There would be no reason to impose a condition on the waiver of sovereign immunity with respect to an action in which that immunity had not been waived in the first instance. Thus, even if the Rule could be read to save some other action subject to a "condition of suit" period of limitations, it cannot save an action subject to §§ 12–201 and 12–202 that is not filed in a Maryland court within the one year period.

To construe the Rule otherwise would be tantamount to this Court, by judicial fiat, effecting a waiver of the State's immunity beyond that decreed by the Legislature, which, as noted, we have steadfastly refused to do. This Court's rule-making authority under Art. IV, § 18 of the Maryland Constitution is limited to adopting rules "concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State." It does not extend to substantively waiving the State's sovereign immunity.

As Sharafeldin's action was concededly not filed in the Circuit Court within the one year period, it is barred by sovereign immunity. The court erred in overruling the Department's motion to dismiss.

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS COMPLAINT; COSTS TO BE PAID BY APPELLEE.